PETER SHIELDS, as Executor, etc., Respondent *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Court of Appeals, April 12, 1892.*

*Master and servant. Negligence.*—Where, in an action for personal injuries, the deceased's duty was to examine the cars and see that they were in good repair, and if found out of repair, not to use them but to send them to the shop for repairs, and he, in negligent disregard of this duty, used a car which he knew to be imperfect, and was injured, the submission of the defendant's negligence to the jury is error.

Appeal from judgment of the supreme court, general term, second department, affirming judgment in favor of plaintiff entered upon verdict.

*Robert F. Wilkinson,* for appellant.

*John Hackett,* for respondent.

EARL, Ch. J.—James Murphy, the plaintiff's testator, had been in the employment of the defendant for many years, in its depot yard at Poughkeepsie. His general duties were those of brakeman and switchman in the management of the coal cars on and about the coal shute and in the yard at that place. He and others were engaged in gathering up the coal under the shute which fell upon the ground while engines were taking coal. The coal thus falling upon the ground was loaded upon cars and taken upon the shute and dumped. There was a trap in the bottom of each car to which a chain was attached, which by means of a crank could be wound up and then hold the trap in its place ; and when a car was to be emptied of coal this crank was turned and the trap let down and the coal thus discharged. In January,

1889, the deceased was engaged in the discharge of his duties in switching two coal cars, and while standing on the top of a car loaded with coal the chain broke and let down the trap and he passed through with the coal and was so injured that he died a few months thereafter, and this action was brought to recover damages on account of his death.

It appeared that about two weeks before the accident one of the links in the chain was broken and the chain was mended, by employees of the defendant engaged in and about the same business with the deceased, by means of wires wound around the two links where the chain broke and thus fastening them together; and in that condition the car was subsequently used. About two days before the accident it was discovered that the trap could not be drawn up flush with the bottom of the car, and thus the coal would drop out, and then the employees of the defendant in the presence of the deceased put boards over the trap to prevent the coal from running out, and thus the car was being used at the time of the accident. No one saw the deceased at the precise time of the accident, and it is only an inference that he went upon the top of the car in the discharge of his duties at the time the chain gave way and he fell through.

It is claimed on the part of the plaintiff that the chain was imperfectly repaired by the wire wound around the links, and that because of its imperfect condition it gave way, causing the testator's death; and the defendant was held liable for a breach of its duty to furnish the deceased with a safe car for his use.

We think that upon the undisputed evidence the plaintiff should have been non-suited. It is undisputed in the evidence that the deceased had the immediate charge of the movement of the cars with which he was engaged. There were cars in perfect condition always in the yard ready for use, and he had the selection of the cars to be used. He was not bound to use an imperfect car, but could at any time select one in proper condition for his use, and it was his busi-

ness to determine what cars in the yard should be selected for his use. At the time the boards were put in the car to prevent the coal from running out his attention was called to the imperfect condition of the car by one of the employees, and he was informed in very strong language of the propriety of taking the car out of the yard. It does not appear affirmatively that he knew that the chain had been broken, but he could have seen that it had been if he had looked and made any examination. He told one of the defendant's witnesses after the injury, and while he was lying in bed in his house, that if he had thrown the car out he would not have been there. No witness testified to the breaking of this chain; but it appeared that it was usual when the coal was frozen in the bottom of a car, and the chain could not be moved and the trap thus lowered, for the employees to break the chain so that the trap could be let down; and the inference is that this chain was broken in that way, as there is no evidence justifying the inference that it was broken in any other way. It was proved by his superior, the train master, under whose direction he worked, that he reported to him in the winter of 1888 that employees were breaking these chains to let down the traps. He was requested to examine the traps to see that they were all fastened up so that the cars would be safe to run, and to be specially careful and get all the cars where chains were broken together and send them to the shop for repairs, and to see that none of them were used in an imperfect condition.

He was cautioned not to use any cars that were damaged in any way, and it was made his especial duty to examine the cars, and not to use any that were imperfect, if he found any such, but to send them to the shop for repairs. These instructions to the deceased were repeated from time to time, and thus it was made his business to examine the cars, and see that imperfect cars were not used. Another witness called on the part of the defendant, who was its agent having charge of all its business at Poughkeepsie, testified that he

received orders from the defendant's superintendent early in January, 1889, to be sure and have the hopper bottoms of coal cars closed before they were sent out of the yard, because they were so many of them being broken by the men wedging them out and breaking the chains, and he told the deceased he should hold him responsible to have those cars where they were broken sent to the shop, and have none of them kept in the yard. This evidence is uncontradicted, and the court and jury had no right to disregard it. Thus we have this state of facts : that the deceased knew that this car was imperfect; that it was his duty not to use it, but to send it to the shop for repairs ; that it was his especial duty to examine the cars and see that they were in good order, and if found out of repair, not to use them, but to send them to the shop. In negligent disregard of his duty, he used this car, and was injured, and it is entirely clear, therefore, that the consequences of that injury cannot be visited upon the defendant.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide event.

All concur.

---

NOTE.

As to risks assumed by servant, see Fredenburg v. N. C. R. Co., 114 N. Y. 582; Bailey v. R., W. & O. R. R. Co., 49 Id. 377; Ryan v. P. Mfg. Co., 57 Hun, 253; Sullivan v. Tioga R. R. Co., 112 N. Y. 643; Appel v. B., N. Y. & P. R. R. Co., 111 Id. 550; Kelly v. 42d St. M. etc., R. R. Co., 58 Hun, 93; Dervin v. Herrman, 58 Supr. 193; Swenson v. M. I. Co., 15 Daly, 319; Williams v. D., L. & W. R. R. Co., 116 N. Y. 628; Bohn v. Havemeyer, 114 Id. 296; McGovern v. Central V. R. R. Co., 123 Id. 280. As to knowledge of servant, see Fitzgerald v. N. Y. C. & H. R. R. R. Co., 59 Hun, 225; Schwartz v. Cornell, 59 Id. 623; Haskins p. N. Y. C. & H. R. R. R. Co., 56 N. Y. 608; Appel v. B., N. Y. & P. R. R. Co., 111 Id. 550; De Forrest v Jewett, 88 Id. 264; Graham v. Chapman, 58 Hun, 602; Mehan v. S., B. etc., Co., 73 N. Y. 585; Hawley v. Northern C. R. R. Co., 82 Id. 370; Durkin v. Sharp, 88 Id. 225.